Gould, to the use of Crockett & Briggs, vs. Citizens Insurance Company.

---

A. B. GOULD TO THE USE OF CROCKETT & BRIGGS vs. CITIZENS' INSURANCE COMPANY.

If the owner of property insured, upon being notified of its loss, abandons it and notifies the underwriters of the abandonment, from the time of the abandonment the underwriters become the owners of the property, whether they accept the abandonment or not, provided the loss happens from one of the perils insured against.

CROCKETT, for appellant.

First ruling by the court, which was objected to, was as follows:
"If the property saved from the wreck was the property of King & Fisher, at the time it

Gould, to the use of Crockett & Briggs, vs. Citizens Insurance Company.

was saved, the plaintiff cannot recover." This statement of the law was erroneous. The effect of an abandonment, if justified by the facts and by the terms of the policy, was to vest the property in the office by retro-action, from the time of the loss. Coolidge vs. Glo. Mas. Ins. Co., 15 Mass, 346; 2 Phill. Ins. p. 418; Schafflin vs. N. Y. Ins Co. 9 Johns. 25.

And that whether the abandonment was accepted or not; 2 Phil. Ins. 400.

It is settled in the United States that "an abandonment once rightfully made, is conclusive *and the rights following from it* are not divested by any subsequent events, which change the situation of the property." By Story Justice. Peele vs. Mason. Rheinlander vs. Ins. Co. Penn, 4 Cranch 29.

"The master in consequence of his abandonment, becomes the agent of the *insurers*, and the *plaintiffs* are not bound by his subsequent acts, unless they have adopted them." The acceptance of the abandonment has nothing to do with the rights of parties acting in good faith, if the abandonment itself, is justifiable. This is clearly settled in the case of Jumel & Deserby vs. The Marine Ins. Co.; also Chesapeake Ins. Co. vs. Stark—7 Johns. 422; 6 Cranch 268; Dickey vs. Am. Ins. Co. 3 Wend 664.

If the abandonment is made while the loss continues total in the eye of the law, *"all the intermediate acts of the master are the acts of the underwriters."*

And if the abandonment is rightly made, the office is thereby subrogated to the property and liability of the insured. The abandonment is like a deed of sale, and vests the property, with also its contingent profits and losses, and the conduct of the captain, in the underwriters Dederer vs Del. Ins. Co., 2 Wash. C. C. Rep. 61. Bryant vs. Com. Ins. Co., 6 Pick. 311.

The question of ownership of the property insured is one partly of law, and partly of fact. The first instruction withholds from the jury the legal information and quality, which would settle the question whether King & Fisher or the office were owners.

It should have been added: If by reason of a peril insured against, there was an actual total loss of the thing insured, or a constructive total loss by reason of the loss of more than 50 per cent. of its value; then, if the insured abandoned during the continuance of such loss, seasonably after notice thereof, the defendants became thereby owners, by relation back from the time of the loss. 2 Phil. 418.

## Geyer & Dayton, for appellees.

Defendants instruction no. 1, we contend was properly given. The undertaking in the policy to contribute to the charges of saving the property in case of an accident, was the assured, and does not, we submit, render the underwriters as such responsible to any other person, nor to the assured themselves except directly on the policy. 1 Phillips Insurance, 330.

The plaintiff's instruction was properly refused. It asserted that the abandonment and notice (if the loss happened by a peril insured against) made the defendants the owners of the property insured, whether they accepted the abandonment or not. It will be perceived that this instruction disposed of any question as to the extent of the loss. The jury were not required to consider whether the loss was sufficient to justify an abandonment or not. Nor were they to consider whether the abandonment, if proper at first was not afterwards waived. The instruction also excludes all questions as to whether the boat was properly equipped, loaded, provided, or managed. The only fact to be found, in order to sustain the validity of the abandonment was that the loss happened by a peril insured against.

We therefore, maintain that the instruction does not present the question of the effect of a valid abandonment in transferring property in a case entirely proper for an abandonment.

But underwriters cannot by an abandonment (refused to be accepted) even in a case proper for an abandonment be made owners of the abandoned property, certainly not so as to make them liable for services rendered in relation to such property. Salvers might have a lien upon property saved, but they would have no claim against the underwriters independent of the property. The under-writers may refuse to accept the salvage and pay the charges. They have the right to pay the

Gould, to the use of Crockett & Briggs, vs. Citizens Insurance Company.

assured his loss and have nothing to do with the property.　1 Philips on Insurance, 466; 2 do. 390; 1 Summers Reports 400.

But owners cannot be made responsible for services rendered to their property without their directions or subsequent approval.

Judge BIRCH delivered the opinion of the court.

The defendants were underwrites on a charge of pork shipped on board the steamer Defiance, and lost by a peril insured against, by reason of the boat being wrecked, and sunk in the Mississippi.　Immediately after the wreck, the master, by a contract in writing, signed by him as "agent for owners and underwriters," and professing to be "for the benefit of whom it may concern," agreed with the plaintiff who was the owner of a bell-boat near by, to save what he could from the wreck, after and for the rate of a certain per cent. as salvage, the master reserving to himself the right to save, first, what he could; under which he did save a portion of the cargo, and notified the office accordingly.

Under this arrangement, the plaintiff saved a considerable amount of property, for which, and for his labor, expenses and services, he claims compensation of the company, the defendants.　An abandonment, with notice, was duly made by King & Fisher, the insured, but not accepted by the defendants.　They afterwards, however, settled the claim of King & Fisher, by an arrangement which gave them the avails of the property saved, besides paying *them* the amount claimed by *them* for loss and damages.

The policy contains the usual clauses, giving the right to the insured and their agents, to labor, expend, travel, &c., in and about the recovery of the property insured, at the expense of the office, &c.

It is deemed unnecessary to recapitulate the testimony, inasmuch as the instructions which were given, as well as the one refused, were hypothetical, and would consequently leave the finding of the facts to the jury.　Those given at the instance of the defendants were:

1. If the property saved from the wreck of the Defiance was the property of King & Fisher, at the time it was saved, the plaintiff is not entitled to recover in this action.

2. Unless the steamboat Defiance was a good boat, for the navigation of the river below St. Louis, within the meaning of the policy, the plaintiffs are not entitled to recover.

It may be conceded that these instructions *condense* the law of the case, and that if given to a jury of *lawyers* might have been sufficient. The first one, however, is deemed to have fallen short of the duty of

the court, in not directing the jury, as prayed for in the instruction which was asked by the plaintiff, upon what *grounds* they should proceed, *for the purposes of this suit,* in finding the question of property, whether (literally, as originally) in King & Fisher, or (*constructively,* by operation of law,) in the underwriters.

It need scarcely be repeated here, the fact being seemingly conceded that, in cases of this nature, the master of the vessel becomes the agent of the underwriters, and that his agreement with the plaintiff, as a wrecker of the boat, was consequently valid, and binding upon the office, (if it was liable at all) unless it was clearly unreasonable or legally disaffirmed or avoided. Applied, therefore, to the technical total loss which the record establishes in reference to the cargo in question, the last instruction unquestionably embodies the true law, and ought not, consequently, to have been refused by the court, particularly as it was in testimony that the defendants were fully apprised of the plaintiff's claim, when they made the subsequent arrangement and settlement spoken of with King & Fisher, the insured, that instruction was in these words:

"If the defendants were underwriters on the 700 barrels of pork, shipped by King & Fisher on the Defiance, and if King & Fisher upon being notified of the loss abandoned to the defendant and immediately gave notice of such abandonment, then, from the time of such abandonment, the defendants were, in contemplation of law, the owners of said property, whether they accepted the abandonment or not, provided the loss happened from one of the perils insured against."

Inasmuch, therefore, as it is apparent from a view of the whole case, that it ought to have been tried under this instruction, in connexion with the first ones, it is reversed and remanded accordingly.